UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FAIR WIND (EUROPE) S.A.,

                   Plaintiff,

    - against -

COSCO LOGISTICS (DALIAN) CO., LTD.,

                   Defendant.
-------------------------------------------------------------X

08 CV _____

## VERIFIED COMPLAINT

Plaintiff, FAIR WIND (EUROPE) S.A., (hereafter referred to as "FAIRWIND" or

"Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its

Verified Complaint against the Defendant, COSCO LOGISTICS (DALIAN) CO., LTD.

(hereafter referred to as "COSCO" or "Defendant") alleges, upon information and belief, as

follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the

breach of a maritime contract of charter. This matter also arises under the Court's federal

question jurisdiction within the meaning of 28 United States § 1331 and the New York

Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et*

*seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity, organized under, and existing by virtue of foreign law and was at all

material times the disponent owner[1] of the motor vessel "OCEAN PRESIDENT" (hereinafter the "Vessel").

3.    Upon information and belief, Defendant COSCO was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of the laws of People's Republic of China with a place of business at 11/12F., Shum Yip Building, No. 2 Gangwan Street, Zhongshan District, Dalian, P.R.C. and was at all material times the Charterer of the Vessel.

4.    By a charter party by way of a fixture note dated September 11, 2006 Plaintiff time chartered the Vessel to Defendant COSCO for one voyage from 1 safe berth/safe port at Bayuqan, China to 1 safe berth/safe port Marghera, Italy and 1 safe berth/safe port Augusta, Italy. The voyage contemplated the carriage of wire rod cargo. *A copy of the charter party is attached hereto as Exhibit 1.*

5.    The charter party called for a demurrage rate of $28,000 per day. *See clause 9 of charter party attached as Exhibit 1.*

6.    The Vessel loaded Defendant's cargo at Bayuquan and thereafter discharged Defendant's cargo at Augusta and then Marghera, Italy. Discharge was completed at Marghera on November 17, 2006.

7.    A dispute has arisen between the parties regarding COSCO's failure to pay demurrage[2] which was incurred while the Vessel discharged cargo at Marghera, Italy.

---

[1] A 'disponent owner' controls the commercial operations of a vessel having taken the vessel on charter from the registered owner of the vessel. The disponent owner usually time charters the vessel from the registered owner and then sub-charters the vessel to charterers.

[2] In commercial shipping, demurrage is an ancillary cost that represents liquidated damages for delays, occurs when the vessel is prevented from the loading or discharging of cargo within the stipulated laytime. Here, the charter party (based on the stated discharge rate of 2,000 metric tons per weather working day as applied to the 6,717,090 metric tons discharged at Marghera) allowed 3 day, 8 hours and 36 minutes of laytime. Discharge took an additional 9.86042 days at a rate of $28,000 per day and hence demurrage of $276,091.76 was incurred.

2

8.    As a result of COSCO's failure to remit demurrage due and payable, which is a breach of the charter party, Plaintiff has sustained damages in the total principal amount of $276,091.76, exclusive of interest, arbitration costs and attorneys fees. *Attached hereto as Exhibit 2 are copies of Plaintiff's unpaid laytime statement and a letter sent by Plaintiff's Chinese lawyers to Defendant demanding payment.*

9.    Pursuant to the charter party, disputes between the parties are to be submitted to arbitration in Hong Kong subject to English law. Fair Wind has commenced Hon Kong arbitration against COSCO pursuant to clause 20 of the Fixture Note and its application for a decision as to the number of arbitrators is currently before the Hong Kong International Arbitration Center. *Attached hereto as Exhibit 3 is a copy of relevant correspondence regarding the arbitration.*

10.    This action is brought in order to obtain jurisdiction over COSCO and also to obtain security for Fair Wind's claims and in aid of arbitration proceedings.

11.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under arbitral proceedings conduct pursuant to English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim – Unpaid Demurrage: | $276,091.76; |
| B. | Estimated interest on claim -<br>2 years at 7% compounded quarterly: | $ 40,005.70; |
| C. | Estimated arbitration costs: | $ 25,000.00; |
| D. | Estimated attorneys' fees and expenses: | $ 50,000.00. |
| **Total:** | | **$391,097.46.** |

3

12.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure[3], but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

13.     The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.     That since this Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $391,097.46 belonging to, due or

---

[3] *See Affidavit of Kevin J. Lennon in Support of Prayer for Maritime Attachment attached hereto as Exhibit 4.*

4

being transferred to, from, or for the benefit of the Defendant, including but not limited to such

property as may be held, received or transferred in Defendant's name or as may be held, received

or transferred for its benefit at, moving through, or within the possession, custody or control of

banking/financial institutions and/or other institutions or such other garnishees to be named, and

that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental

Admiralty Rule B answer the matters alleged in the Complaint;

C.      That the Court retain jurisdiction to compel the Defendant to arbitrate in

accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.      That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

E.      That this Court recognize and confirm any arbitration award(s) or judgment(s)

rendered on the claims set forth herein as a Judgment of this Court;

F.      That in the alternative this Court enter judgment against the Defendant on the

claims set forth herein;

G.      That this Court award Plaintiff the attorneys' fees and costs incurred in this

action; and

H.      That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated:       New York, NY
             July 3, 2008

The Plaintiff,
FAIR WIND (EUROPE) S.A.

By: _____
    Kevin J. Lennon
    Nancy R. Peterson (Siegel)

LENNON, MURPHY & LENNON, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile
kjl@lenmur.com / nrp@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )
                  )    ss.:    City of New York
County of New York )

1.      My name is Kevin J. Lennon.

2.      I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.      I am a partner in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.      The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.      The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      New York, NY
            July 3, 2008

                                        Kevin J. Lennon

# EXHIBIT 1

24-05-2007  17:05  FROM-

# FIXTURE NOTE

DATE:2006/9/11

## CHARTER: COSCO LOGISTICS ( DALIAN ) CO., LTD.
## OWNER:. FAIR WIND (EUROPE) SA

1. M/V OCEAN PRESIDENT (EX: SEA ANGEL)

- HONG KONG FLAG BLT (OSHIMA) 2001    TYPE BULK CARRIER
- 50,908 MT DWT / 11.898M SSW    52,250 MT DWT / 12.17M TSW
- 49,550 MT DWT / 11.67M WSW    TONNAGE INT'L   GROSS / NET : 28,600 / 17,500
- LOA/BEAM : 189.99 / 32.26    MOULED DEPTH/L.B.P: 16.67 M / 182 M
- GRAIN / BALE : 85,252 M3 / 64,000 M3    5 HO/HA
- HATCH COVERS TYPE WEATHER TIGHT FOLDING TYPE STEEL HATCH COVER
- CARGO HOLDS CAPACITIES

**HOLD GRAIN BALE**

1 11,691 11,465
2 14,148 13,876
3 13,310 13,054
4 14,052 13,783
5 12,051 11,822

TTL 85,252 64,000



- VSLS NEW P AND I : GARD UK.   CALL SIGN : VRAD4    CLASSIFICATION : DNV,+1A1 BULK
CARRIER ESP(HC/E). GRAIN-U,NO2 AND NO4 HOLDS MAY BE   EMPTY LCS(S), EO,DK(+), HA(+),
IB(+)   IMO NO : TBA
- CHARTERERS TO EMPLOY COMPETENT SHORE HANDS TO   OPERATE VSLS CRANE/GRABS
AT CHARTS COST/RISK   CRANES 4 X 30TS - GRABS 4 X 12M3
- VESSELS GRABS ISNT NOT FOR CHARTS USE DURING THE CURRENCEY OF THIS CHARTER
- GEAR MAX S.W.L UNDER GRAB OPERATION IS 24 MTS (INCL GRAB WEIGHT  OF 9 MTS)
HOLDS/HATCHES/FLAT TANK TOP DIMENSION DETAILS AFLWG:
1.HOLD CAPACITY (FOR BALE CARGO - CUB.M) AND HATCH DIMENSIONS(M);
BELOW HO/HA DIMENSIONS TO BE RECONFIRMED/CLARIFIED BY MASTER

| H1 — 11465 | — 17.85 X 17.6 | H2 — 13876 | — 20.4 X 17.6 |
|---|---|---|---|
| H3 — 13054 | — 18.7 X 17.6 | H4 — 13783 | — 20.4 X 17.6 |
| H5 — 11822 | — 20.4 X 17.6 | | |

ADA N WOG

24-35-2007  17:05  FROM
I-456  P 002/003  F-116

2.CGO: 6,600MT WIRE ROD 5% MOLCO

DIMS 1.25 X 1.3M 1.3MT/PC 2,600MT + DIMS 1.25 X (1.6-1.8 )M 2.0MT/PC 4000MT

CGO: 10,000MT WIRE ROD 5%MOLCO

DIMS 1.25 X1.3M 1.3MT/PC 4,200MT + 1.25 X (1.6-1.8)M 2.0MT 2.0MT/PC 5,800MT

3. MAX 12 TIERS.

4.L/D PORT:1SBP BAYUQUAN, CHINA / 1SBP MARGHERA (6,600MT)+1SBP AUGUSTA (10,000MT), ITALY.

5.LYCN: 20 -27TH SEP 06

6.FRT USD66.50/MT ON FIOST L/S/D BSS1/1.

7.LOADING RATE: FREE IN CQD .

8.DISCHARGING RATE: 2,000MT SHEX UU PWWD AT MARGHERA, 2,500MT AT AUGUSTA SHEX UU PWWD.

9.DEMURRAGE: USD28,000 PAPR.

10.FRT 100 PCT TO BE PAID INTO OWNERS NOMINATED BANK W/I 5 BKG DYS ACOL AND S/R B/SL MARKED FRT PAYABLE AS C/P . IF FRT PDD BSL NEEDED, THE FRT TB PAID PRIOR S/R B/SL

FRT DEEMED EARNED ON COMPLETION OF LOADING DISCOUNTLESS AND NON RETURNABLE VSL AND/OR CGO LOST OR NOT LOST.

11.IF CLEAN BILLS OF LADING REQUIRED THAT OWNERS ACCEPT A LOI AS PER OWNER'S PNI STANDARD WORDINGS FOR ISSUING "CLEAN BILLS OF LADING" SIGNED BY SHIPPERS & CHARTERERS ONLY BASIS MINOR REMARKS-UNLESS CLEAN MATES RECEIPT HAS BEEN SIGNED BY MASTER OR HIS AGENT.

12.ANY TAXES/DUES ON CARGO TO BE FOR CHARTERER'S ACCT. ANY TAXES/DUES ON VESSEL / FREIGHT / CREW TO BE FOR OWNER'S ACCT.

13.DETENTION: USD28,000 PDPR IN CASE CGO A/O CGO DOCS ARE NOT READY UPON VSL ARRVL LOADING PORT

14.OWNER OR OWNER'S AGENT GIVE 10,7,5,3,2,1DAYS ETA LOADING PORT.

15.ANY LIGHTERAGE / LIGHTERNING, IF ANY, TO BE FOR CHARTERER'S ACCT.

16.IT IS UNDERSTOOD THAT THIS FIXTURE IS TO BE KEPT CONFIDENTIAL AND NOT TO BE REPORTED BY OWNER'S OR BROKERS INVOLVED.

17. SHIPSIDE TALLY TB OWRS ACCT, SHORESIDE TALLY TB CHTRS ACCT.





24-05-2007  17:05    FROM-

18. SHORE CRANE TBF CHARTER'S ACCT.
19. OWNERS AGENTS BENDS
20. ARBITRATION IN HONGKONG AND ENGLISH LAW TO APPLY.
21. ALL OTHER TERMS AS PER GENCON 94.
**END OF CHARTER PARTY**

**OWNERS**





**CHARTERERS**

11/9-2006.

3

A5.3

APPENDIX 5: FORMS

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL,<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"    Part I |
|---|---|
| | 2. Place and date |
| 3. Owners/Place of business (Cl. 1) | 4. Charterers/Place of business (Cl. 1) |
| 5. Vessel's name (Cl. 1) | 6. GT/NT (Cl. 1) |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
| 9. Expected ready to load (abt.) (Cl. 1) | |
| 10. Loading port or place (Cl. 1) | 11. Discharging port or place (Cl. 1) |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1) | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4) | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) | (a) Laytime for loading |
| 18. Agents (loading) (Cl. 6) | (b) Laytime for discharging |
| 19. Agents (discharging) (Cl. 6) | (c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7) | 21. Cancelling date (Cl. 9) |
| | 22. General Average to be adjusted at (Cl. 12) |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19) | |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19) | 26. Additional clauses covering special provisions, if agreed |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Printed and sold by Fr. G. Knudtzons Bogtrykkeri A/S, 61 Vallensbækvej, DK-2625 Vallensbæk,
Telefax +45 43 66 07 08 by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen



GENCON FORM 1976                                                A5.3

PART II

"Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:
The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.
And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. **Deviation Clause**
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight**
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.
(b) *Prepaid.* If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost.
Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.
(c) *On delivery.* If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.
Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.

5. **Loading/Discharging**
(a) *Costs/Risks*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required on the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.
(b) *Cargo Handling Gear*
Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power – pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party – shall not count as laytime or time on demurrage.
On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.
(c) *Stevedore Damage*
The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.
The Charterers are obliged to repair any Stevedore damage prior to completion of the voyage, but must repair Stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of the Charterers and shall be paid to the Owners by the Charterers at the demurrage rate.

6. **Laytime**
*(a) Separate laytime for loading and discharging*
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
*(b) Total laytime for loading and discharging*
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
*(c) Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of

readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 18.
If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.
If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.
Time used before commencement of laytime shall count.
* Indicate alternative (a) or (b) as agreed, in Box 16

7. **Demurrage**
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.
In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the Vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.

8. **Lien Clause**
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. **Cancelling Clause**
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.
(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option to cancel the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading**
Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**
General Average shall be adjusted in London unless otherwise agreed in Box 19 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).
If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Owners are not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery.".

13. **Taxes and Dues Clause**
(a) *On Vessel* – The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.
(b) *On cargo* – The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.
(c) *On freight* – Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

A5.3                    APPENDIX 5: FORMS

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

14. Agency

16. Brokerage

15. General Strike Clause

17. War Risks ("Voywar 1993")

18. General Ice Clause

19. Law and Arbitration

1116

# EXHIBIT 2

# FAIR WIND (EUROPE) SA

43rd floor Parkson Mension 44-60Zhongshan Road,          Phone: +86 532 82923868
Qingdao China.                                          Fax : +86 532 82923869
P.C:266001                                              E-mail:chartering@fair-wind.com.cn

## LAYTIME STATEMENT

Date:    29-Oct-07

| Vessel's Name: | MV. OCEAN PRESIDENT | | | |
| Discharge port: | PORTO MARGHERA, ITALY | | | |
| Cargo & Quantity: | Hot Wire Rods | 8,717,090 | MT | |
| Terms: | | 2,000 | MT/ | WWD SHEX UU |

| Vessel Arrived: | | 02-Nov-06 | 20:30 |
| Notice of Readiness Tendered: | | 02-Nov-06 | 20:30 |
| Berthed: | | 09-Nov-06 | 13:12 |
| Discharge Commenced: | | 09-Nov-06 | 14:00 |
| Discharge completed: | | 17-Nov-06 | 19:15 |
| Laytime commenced: | | 03-Nov-06 | 13:00 |

| Date | Day | From | To | remarks | Laytime used DD | HH | MN |
|------|-----|------|-----|---------|-----|-----|-----|
| 2006-11-2 | Thursday | 20:30 | 24:00 | turn time | | | |
| 2006-11-3 | Friday | 0:00 | 13:00 | turn time | | | |
| | | 13:00 | 24:00 | Laytime commence | | | 11 |
| 2006-11-4 | Saturday | 0:00 | 24:00 | | | 1 | |
| 2006-11-5 | Sunday | 0:00 | 24:00 | SHEX | | | |
| 2006-11-6 | Monday | 0:00 | 24:00 | | | 1 | |
| 2006-11-7 | Tuesday | 0:00 | 21:36 | | | 21 | 36 |
| 2006-11-7 | | 21:36 | 24:00 | Demurrage | | 2 | 24 |
| 2006-11-8 | Wednesday | 0:00 | 24:00 | | 1 | | |
| 2006-11-9 | Thursday | 0:00 | 24:00 | | 1 | | |
| 2006-11-10 | Friday | 0:00 | 24:00 | | | | |
| 2006-11-11 | Saturday | 0:00 | 24:00 | | 1 | | |
| 2006-11-12 | Sunday | 0:00 | 24:00 | | 1 | | |
| 2006-11-13 | Monday | 0:00 | 24:00 | | 1 | | |
| 2006-11-14 | Tuesday | 0:00 | 24:00 | | 1 | | |
| 2006-11-15 | Wednesday | 0:00 | 24:00 | | | | |
| 2006-11-16 | Thursday | 0:00 | 24:00 | | 1 | | |
| 2006-11-17 | Friday | 0:00 | 18:15 | | | 18 | 15 |
| Total: | | | | | 13 | 5 | 15 |

| | | | |
|---|---|---|---|
| Time Allowed | 4 | 8 | 36 |
| Time Used | 13 | 5 | 15 |
| Time Lost | 8 | 20 | 39 |

Demurrage      9.86042    dys x US$28,000    =    US$276,091.76

# ROLMAX LAW OFFICE
## (Guangzhou)

Rm 3205-3206, East Tower, Tian Yu Business Plaza,
753 Dong Feng Dong Road, Guangzhou 510080 , P. R. China
Tel: +86 20 2281 6900     Fax: +86 20 2281 6920/6930
Web-site: www.rolmax.com    Email: guangzhou@rolmax.com

| | |
|---|---|
| **Date** | : 17 December 2007 |
| **To** | : Cosco Logistics (Dalian) Co., Ltd. |
| **Attn** | : Mr. Zhang Kun |
| **Fax No** | : 0411 8264 4651 |
| **Cc** | : Fair Wind (Europe) SA |
| **Attn** | : Mr. Du Qing |
| **Fax No** | : 0532 8202 3889 |
| **From** | : Zhang Yixin |
| **Our Ref** | : RMX/gz/ZYX/07-014 |
| **Page(s)** | : 4 ÷ 4 |

### Re: "Ocean President" Fixture Note dd. 11.09.06

We are instructed on behalf of Fair Wind (Europe) SA, who has a claim for demurrage against you under the above charterparty.

We understand that by a charterparty as evidenced by a fixture note dated 11 September 2006, our clients as Owners chartered the vessel "Ocean President" to you as Charterers for a voyage of carriage of 16,600MT wire rod from Bayuquan, China to Augusta and Marghera, Italy, and that a dispute arose out of the charter in respect of the demurrage incurred at the 2nd discharge port - Marghera. According to Owners' calculation in their updated Laytime Statement as attached hereto, demurrage was incurred by the vessel at Marghera in the sum of US$276,091.76. Whereas, Charterers deny Owners' laytime and demurrage calculation at Marghera by alleging that since there was other part cargo (30,197.06MT steel slabs) discharged during the discharge of the cargo (6,717.09MT wire

*CONFIDENTIALITY NOTICE*

*This facsimile is intended only for the use of the named recipient and may be confidential and may contain privileged information. If you are not the named recipient, you are hereby notified that any use, copying, disclosure or dissemination of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by collect telephone so that we may arrange to collect the facsimile from you. We will reimburse you the expenses.*

rod) under this charter at Marghera, the demurrage in respect of discharge of the latter should be calculated pro rata.

By examining the documents relevant to this issue, we take a firm view that the Owners' calculation on laytime and demurrage at the 2nd discharge port (Marghera) is proper and contractual, in contrast, Charterers' denial and argument in this regard is misconceived and arbitrary, for which we would point out as follows:

1. In the present case, the vessel discharged two parts of cargo at the same berth at Margthera, one was wire rod under this charterparty, another was steel slab under another separate charter. According to the stowage of these two cargoes in the vessel's hold, the wire rod cargo under this charter was not overstowed by the steel slab cargo under another charter, and the former was freely accessible to be discharged upon the vessel's arrival, berthing and in the whole course of the vessel's cargo operations at the discharge berth. In the circumstances, discharging of the wire rod cargo was not affected by the presence or stowage of the steel slab cargo.

2. Under English law governing this charter, it is well established that where a ship's cargo operations involve two cargoes under two separate charters, if both cargoes are accessible, then laytime under both charters will run concurrently after arrival, if loading or discharging of each cargo is to take place at the same berth, then time, laytime or demurrage, will continued to run during this operation, ending in respect of each charter when the cargo carried under it is loaded or discharged. Furthermore, in the case of multiple charters each will specify its own demurrage rate and if, under the terms of the various charters, demurrage is due, then the shipowners is entitled to claim the cumulative amount. See John Schofield on Laytime and Demurrage 4th ed. at pages 303, 308 & 309, as attached hereto. Following the above principles, there is no ground for Charterers to argue that the laytime and/or demurrage in respect of discharging of the wire rod cargo under this charter, freely accessible to be unloaded in the process of discharging at Marghera, should be calculated pro rata by taking account of the discharge of other part cargo of steel slab under another separate charter.

3. In their previous messages, Charterers alleged that Owners could not provide details to explain whether the wire rod cargo influenced the whole discharge process, and the Statement of Facts (for the vessel's discharging at Marghera) could not make it clear on this point, so they denied the demurrage calculated by Owners. However, such an approach taken by Charterers simply reverses the sequence of the parties' burden of proof, and thus is improper and misconceived. The Statement of Facts for the vessel's

discharging at Marghera, being the underlying document for calculation of the laytime and demurrage in question, clearly recorded that the vessel arrived at Marghera at 2030LT on 02.11.06, and the discharge of the wire rod cargo firstly started at 1400LT on 09.11.06 and was not completed until 1815LT on 17.11.06, without any remarks that the discharge of the aforesaid cargo under this charter was ever affected or hindered by the presence or discharge of the other part cargo of steel slab in the course of discharge operation. Accordingly, it is *prima facie* that the discharge of the wire rod cargo was conducted in the natural course of event, without any time loss caused by the other cargo of steel slab. If Charterers challenge Owners' continuous calculation of laytime and demurrage, it is Charterers who must put to strict proof that at what time, in what case and to what extent the discharge of the wire rod cargo under this charter was indeed affected or delayed by the presence or discharge of the other cargo of steel slab. However, Charterers have so far failed to provide any substantial evidences to such effect, for which their bare denial of Owners' laytime and demurrage cannot be justified and founded.

4. As to the particular arrangement made by stevedores for discharging the wire rod cargo, it was simply the business of Charterers who were responsible for discharging under the charter and it should be on Charterers' own account. Moreover, the time used for discharging of the other cargo of steel slab is totally irrelevant to the calculation of laytime and demurrage in respect of discharge of the wire rod cargo under this charter, since the wire rod cargo was accessible for discharging all along in the present case.

In the light of above, our clients' calculation of laytime and demurrage in respect of discharging of the wire rod cargo at Marghera is well contractual and proper, and you as Charterers are liable to pay the demurrage in the sum of US$276,091.76 under the charterparty.

It is now 13 months since the vessel completed discharge, but you have to date failed to pay any of the outstanding demurrage of US$276,091.76 due to our clients despite the latter's numerous demands. In the circumstances, we are instructed to take all necessary steps, including but not limited to arresting and/or attaching such of your assets, wherever they may be found, and commencing arbitration against you, without further notice to you, in order for recovery of the outstanding sums. UNLESS you effect payment of the sum of US$276,091.76 to our clients' account within 7 days of the date of this fax, **i.e. by latest Monday 24 December 2007.** Moreover, our clients reserve the right to claim all costs associated in seeking recovery of the sums claimed by them by any appropriate means.

ROLMAX LAW OFFICE, GUANGZHOU                          Page 4

In addition, in case of your default in the above-required payment, our clients intend to report your breach of the charter to the Baltic Exchange, BIMCO, the IMB, and such brokers and credit reporting agencies as they in their discretion deem fit.

We look forward to hearing from you with confirmation that payment has been made as demanded above, for the avoidance of substantial legal costs to be incurred which are bound to be for your responsibility, and the inevitable interference that will be caused to your extensive trading programme as a result.

Best regards,

*Rolmax Law Office*

Zhang Yixin
**Rolmax Law Office, Guangzhou**

# FAIR WIND (EUROPE) SA

43rd floor Parkson Mansion 44-50Zhongshan Road.      Phone: +86 532 82023388
Qingdao China.      Fax : +86 532 82023389
P.C:266001      E-mail:chartering@fair-wind.com.cn

## LAYTIME STATEMENT

Date:    29-Oct-07

| Vessel's Name: | MV. OCEAN PRESIDENT | | | |
| Discharge port: | PORTO MARGHERA. ITALY | | | |
| Cargo & Quantity: | Hot Wire Rods | 6,717.090 | MT | |
| Terms: | | 2,000 | MT/ | WD, SHEX UU |

| Vessel Arrived: | 02-Nov-06 | 20:30 |
| Notice of Readiness Tendered: | 02-Nov-06 | 20:30 |
| Berthed: | 09-Nov-06 | 13:12 |
| Discharge Commenced: | 09-Nov-06 | 14:00 |
| Discharge completed: | 17-Nov-06 | 18:15 |
| Laytime commenced: | 03-Nov-06 | 13:00 |

| Date | Day | From | To | remarks | Laytime used DD | HH | MN |
|---|---|---|---|---|---|---|---|
| 2006-11-2 | Thursday | 20:30 | 24:00 | turn time | | | |
| 2006-11-3 | Friday | 0:00 | 13:00 | turn time | | | |
| | | 13:00 | 24:00 | Laytime commence | | 11 | |
| 2006-11-4 | Saturday | 0:00 | 24:00 | | 1 | | |
| 2006-11-5 | Sunday | 0:00 | 24:00 | SHEX | | | |
| 2006-11-6 | Monday | 0:00 | 24:00 | | 1 | | |
| 2006-11-7 | Tuesday | 0:00 | 21:36 | | | 21 | 36 |
| 2006-11-7 | | 21:36 | 24:00 | Demurrage | | 2 | 24 |
| 2006-11-8 | Wednesday | 0:00 | 24:00 | | 1 | | |
| 2006-11-9 | Thursday | 0:00 | 24:00 | | 1 | | |
| 2006-11-10 | Friday | 0:00 | 24:00 | | 1 | | |
| 2006-11-11 | Saturday | 0:00 | 24:00 | | 1 | | |
| 2006-11-12 | Sunday | 0:00 | 24:00 | | 1 | | |
| 2006-11-13 | Monday | 0:00 | 24:00 | | 1 | | |
| 2006-11-14 | Tuesday | 0:00 | 24:00 | | 1 | | |
| 2006-11-15 | Wednesday | 0:00 | 24:00 | | 1 | | |
| 2006-11-16 | Thursday | 0:00 | 24:00 | | 1 | | |
| 2006-11-17 | Friday | 0:00 | 18:15 | | | 18 | 15 |
| Total: | | | | | 13 | 5 | 15 |

| Time Allowed | 3 | 8 | 36 |
| Time Used | 13 | 5 | 15 |
| Time Lost | 9 | 20 | 39 |

Demurrage    9.86042    days x US$28,000    =    US$276,091.76

# EXHIBIT 3

# ROLMAX LAW OFFICE
# (Guangzhou)

Rm 3206-3208, East Tower, Tian Yu Business Plaza,
763 Dong Feng Dong Road, Guangzhou 510080 , P. R. China
Tel: +86 20 2281 6900    Fax: +86 20 2281 6920/6930
Web-site: www.rolmax.com    Email: guangzhou@rolmax.com

| | |
|---|---|
| **Date** | : 16 June 2008 |
| **To** | : Hong Kong International Arbitration Center |
| **Attn** | : Christopher To Esq. |
| **Fax No** | : 00 852 2524 2171 |
| **Cc** | : COSCO Logistics (Dalian) Co., Ltd. |
| **Attn** | : Mr. Zhang Kun (without attachment 3) |
| **Fax No** | : 0411 8264 4651 |
| **Also C/o** | : Richards Butler in association with Reed Smith LLP |
| **Attn** | : Mr. Lianjun Li / Ms. Zeldar Wang (without attachment 3) |
| **Ref** | : LJL/TMCW/C1310-001 |
| **Fax No** | : 00 852 2810 1607 |
| **Cc** | : Fair Wind (Europe) S.A. |
| **Attn** | : Mr. Du Qing (without attachment 3) |
| **Fax No** | : 0532 8202 3889 |
| **From** | : Zhang Yixin |
| **Our Ref** | : RMX/gz/ZYX/07-014 |
| **Page(s)** | : 2 + 6 (+ 2 to HKIAC) |

*18:00*

### Re: "Ocean President" - Fixture Note dd. 11.09.2006
### Application for a Decision as to the Number of Arbitrators

We are instructed on behalf of Fair Wind (Europe) S.A., who as Owners have    disputes
with COSCO Logistics (Dalian) Co., Ltd. as Charterers, in respect of the Owners' claim, in
the region of US$276,091.76, for demurrage incurred by the vessel at the second discharge
port in a voyage charter under the subject fixture note.

*CONFIDENTIALITY NOTICE*

*This facsimile is intended only for the use of the named recipient and may be confidential
and may contain privileged information. If you are not the named recipient, you are hereby notified that any use, copying, disclosure or
dissemination of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by collect
telephone so that we may arrange to collect the facsimile from you. We will reimburse you the expenses.*

ROLMAX LAW OFFICE, GUANGZHOU                                    Page 2

Since the fixture note simply provides that arbitration in Hong Kong, we ever invited Charterers, through their solicitors, Richards Butler in association with Reed Smith LLP, to agree that the disputes under the charterparty and the arbitration shall be heard by three arbitrators by latest 30 May 2008, by our fax of 27 May 2008 (**Attachment 1**), but Charterers have to date failed to respond. Thus, no agreement can be reached between the parties in respect of the number of arbitrators. In the circumstances, according to section 34C(5) of the Arbitration Ordinance, we hereby apply, on behalf of our clients, to your esteemed center for a decision as to the number of arbitrator in the arbitration, for which we enclose herewith HKIAC's Form 2 completed by us (**Attachment 2**).

We confirm that Charterers' copy of this fax have been duly sent to Charterers as well as through their solicitors. We attach hereto our fax call report recording the service (**Attachment 3**), which we assume could be deemed as the documentary verification of service on Charterers of a copy of the document in relation to the subject application.

Given that the sum in dispute is not modest and the claim is not incomplex, it is preferable for three arbitrators to determine the dispute in the reference.

Your kind assistance in this matter would be highly appreciated and we look forward to hearing from you soon.

Best regards

*Rolmax Law Office*

Zhang Yixin
**Rolmax Law Office, Guangzhou**

ATTACHMENT *1*

# ROLMAX LAW OFFICE
## (Guangzhou)

Rm 3205-3206, East Tower, Tian Yu Business Plaza,
753 Dong Feng Dong Road, Guangzhou 510080 . P. R. China
Tel: +86 20 2281 6900    Fax: +86 20 2281 6920/6930
Web-site: www.rolmax.com    Email: guangzhou@rolmax.com

| | |
|---|---|
| **Date** | : 27 May 2008 |
| **To** | : Richards Butler in association with Reed Smith LLP |
| **Attn** | : Mr. Lianjun Li / Ms. Zeldar Wang |
| **Your Ref** | : LJL/TMCW/C1310-001 |
| **Fax No** | : 00 852 2810 1607 |
| **From** | : Zhang Yixin |
| **Our Ref** | : RMX/gz/ZYX/07-014 |
| **Page(s)** | : 1 |

### Re: "Ocean President" Fixture Note dd. 11.09.06

We refer to previous correspondence and particularly our fax of 31 March 2008.

We hereby, one more time, invite your clients to agree that the disputes under the charterparty and the arbitration shall be heard by three arbitrators. If we do not receive your clients' confirmation of their agreement to three arbitrators, within 3 days of this fax's date, our clients will make an application to the HKIAC for its decision as to the number of the arbitrators, with their comments that there should be three arbitrators for the case in the arbitration. We should be grateful if your clients would agree to three arbitrators within the above time, to avoid the costs of an application to the HKIAC which may well be saved for the parties' mutual benefit so long as your clients take a sensible approach to this matter.

We look forward to hearing from you soon.

Best regards,

*Rolmax Law Office*

Zhang Yixin

**Rolmax Law Office, Guangzhou**

*CONFIDENTIALITY NOTICE*

*This facsimile is intended only for the use of the named recipient and may be confidential and may contain privileged information. If you are not the named recipient, you are hereby notified that any use, copying, disclosure or dissemination of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by collect telephone so that we may arrange to collect the facsimile from you. We will reimburse you the expenses.*

ATTACHMENT 2

## FORM 2

### Hong Kong International Arbitration Centre

### APPLICATION FOR A DECISION AS TO THE
### NUMBER OF ARBITRATORS

This form shall be used to apply to Hong Kong International Arbitration Centre (HKIAC) pursuant to the Arbitration Ordinance (Cap. 341) to apply for a decision as to the number of arbitrators.

### 1. THE UNDERSIGNED HEREBY APPLIES TO HKIAC FOR A DECISION AS TO WHETHER THERE SHALL BE 1 OR 3 ARBITRATORS:

In view of the amount in dispute and the complexity of the claim, three arbitrators are preferable.

### 2. DETAILS OF PARTIES:

**CLAIMANT:**
Name        Fair Wind (Europe) S.A.
Address     Avenue du Theatre 7, c/o Fid & Trust SA, Lausanne, Switzerland
Tel No      86 532 8202 3888
Fax No      86 532 8202 3889
Nationality Switzerland

**Solicitor/Adviser (If any):**
Name        Rolmax Law Office, Guangzhou
Address     Room 3205-3206, East Tower, Tian Yu Business Plaza, 753 Dong Feng
            Dong Road, Guangzhou 510080, China
Tel No      86 20 2281 6900
Fax No      86 20 2281 6920

**RESPONDENT:**
Name        COSCO Logistics (Dalian) Co., Ltd.
Address     Shum Yip Building, No.2 Guangwan Street, Dalian, China
Tel No      86 411 8251 3888
Fax No      82 411 8263 7169 / 8264 4651
Nationality P.R.China

**Solicitor/Adviser (If any):**
Name        Richards Butler in association with Reed Smith LLP
Address     20th Floor, Alexandra House, 16-20 Chater Road, Hong Kong
Tel No      852 2810 8008

1

Fax No    852 2810 1607

3. **CONTRACT / AGREEMENT**: (Enclose a copy or summarize briefly.)

A Fixture Note dated 11 September 2006 between the claimant as the owners and the respondent as the charterers, for a voyage charter of m.v. "Ocean President", as attached hereto.

4. **ARBITRATION CLAUSE OR AGREEMENT**: (A copy is attached to this application.)

Arbitration clause, which is clause 20 under the aforesaid Fixture Note.

5. **DISPUTE**: (Brief particulars of nature, circumstances and location of dispute, issue for arbitration and amount at issue are all that are required.)

The claimant owners have a claim against the respondent charterers, in the region of US$276,091.76, for the demurrage incurred by the vessel at the 2nd discharge port of Marghera, Italy.

6. **OTHER RELEVANT DETAILS:**

7. **APPOINTMENT FEE:**

Please advise us of your bank account details for the claimant's transfer of your decision fee of HK$4,000.00 into your account.

8. **CERTIFICATE:**
I hereby certify that the details contained herein are true and accurate.

(SIGNED)                                    Date: 16 June 2008

Name and Capacity Zhang Yixin, Partner of Robnax Law Office, Guangzhou.

2

## FIXTURE NOTE

DATE:2006/9/11

CHARTER: COSCO LOGISTICS ( DALIAN ) CO., LTD.
OWNER: FAIR WIND (EUROPE) SA

1. M/V OCEAN PRESIDENT (EX: SEA ANGEL)

- HONG KONG FLAG BLT (OSHIMA) 2001    TYPE BULK CARRIER
- 50,806 MT DWT / 11,898M SSW    52,250 MT DWT / 12.17M TSW
- 49,550 MT DWT / 11.67M WSW    TONNAGE INT'L    GROSS / NET : 28,600 / 17,500
- LOA/BEAM : 189.99 / 32.23    MOULED DEPTH/L.B.P: 16,67 M / 182 M
- GRAIN / BALE : 65,252 M3 / 64,000 M3    5 HO/HA
- HATCH COVERS TYPE WEATHER TIGHT FOLDING TYPE STEEL HATCH COVER
- CARGO HOLDS CAPACITIES



| HOLD | GRAIN | BALE |
| --- | --- | --- |
| 1 | 11,691 | 11,465 |
| 2 | 14,148 | 13,876 |
| 3 | 13,310 | 13,054 |
| 4 | 14,052 | 13,783 |
| 5 | 12,051 | 11,822 |
| TTL | 65,252 | 64,000 |

- VSLS NEW P AND I : GARD UK.    CALL SIGN : VRAD4    CLASSIFICATION : DNV.+1A1 BULK
  CARRIER ESP(HC/E). GRAIN-U,NO2 AND NO4 HOLDS MAY BE    EMPTY LCS(S), EO,DK(+), HA(+),
  IB(+)    IMO NO : TBA
- CHARTERERS TO EMPLOY COMPETENT SHORE HANDS TO    OPERATE VSLS CRANE/GRABS
  AT CHARTS COST/RISK    CRANES 4 X 30TS - GRABS 4 X 12M3
- VESSELS GRABS ISN'T NOT FOR CHARTS USE DURING THE CURRENCEY OF THIS CHARTER
- GEAR MAX S.W.L UNDER GRAB OPERATION IS 24 MTS (INCL GRAB WEIGHT    OF 9 MTS)
  HOLDS/HATCHES/FLAT TANK TOP DIMENSION DETAILS AFLWG:
1.HOLD CAPACITY (FOR BALE CARGO - CUB.M) AND HATCH DIMENSIONS(M);
BELOW HO/HA DIMENSIONS TO BE RECONFIRMED/CLARIFIED BY MASTER

| H1 — 11465 | — 17.85 X 17.6 | H2 — 13875 | — 20.4 X 17.6 |
| H3 — 13054 | — 18.7 X 17.6 | H4 — 13783 | — 20.4 X 17.6 |
| H5 — 11822 | — 20.4 X 17.6 | | |

ADA N WOG

2.CGO: 6,600MT WIRE ROD 5% MOLCO
DIMS 1.25 X 1.3M 1.3MT/PC 2,600MT + DIMS 1.25 X (1.6-1.8 )M 2.0MT/PC
4000MT
CGO: 10,000MT  WIRE ROD 5%MOLCO
DIMS 1.25 X1.3M 1.3MT/PC 4,200MT + 1.25 X (1.6-1.8)M 2.0MT 2.0MT/PC
5,800MT
3. MAX 12 TIERS.
4.L/D PORT:1SBP BAYUQUAN, CHINA / 1SBP MARGHERA (6,600MT)+1SBP
AUGUSTA (10,000MT), ITALY.
5.LYCN: 20 -27TH SEP 06
6.FRT USD66.50/MT ON FIOST L/S/D BSS1/1.
7.LOADING RATE: FREE IN CQD .
8.DISCHARGING RATE: 2,000MT SHEX UU PWWD AT MARGHERA, 2,500MT
AT AUGUSTA SHEX UU PWWD.
9.DEMURRAGE: USD28,000 PAPR.
10.FRT 100 PCT TO BE PAID INTO OWNERS NOMINATED BANK W/I 5 BKG
DYS ACOL AND S/R B/SL MARKED FRT PAYABLE AS C/P . IF FRT PDD BSL
NEEDED, THE FRT TB PAID PRIOR S/R B/SL
FRT DEEMED EARNED ON COMPLETION OF LOADING DISCOUNTLESS
AND NON RETURNABLE VSL AND/OR CGO LOST OR NOT LOST.
11.IF CLEAN BILLS OF LADING REQUIRED THAT OWNERS ACCEPT A LOI
AS PER OWNER'S PNI STANDARD WORDINGS FOR ISSUING "CLEAN
BILLS OF LADING" SIGNED BY SHIPPERS & CHARTERERS ONLY BASIS
MINOR REMARKS-UNLESS CLEAN MATES RECEIPT HAS BEEN SIGNED
BY MASTER OR HIS AGENT.
12.ANY TAXES/DUES ON CARGO TO BE FOR CHARTERER'S ACCT. ANY
TAXES/DUES ON VESSEL / FREIGHT / CREW TO BE FOR OWNER'S ACCT.
13.DETENTION: USD28,000 PDPR IN CASE CGO A/O CGO DOCS ARE NOT
READY UPON VSL ARRVL LOADING PORT
14.OWNER OR OWNER'S AGENT GIVE 10,7,5,3,2,1DAYS ETA LOADING
PORT.
15.ANY LIGHTERAGE / LIGHTERNING, IF ANY, TO BE FOR CHARTERER'S
ACCT.
16.IT IS UNDERSTOOD THAT THIS FIXTURE IS TO BE KEPT CONFIDENTIAL
AND NOT TO BE REPORTED BY OWNER'S OR BROKERS INVOLVED.
17. SHIPSIDE TALLY TB OWRS ACCT, SHORESIDE TALLY TB CHTRS ACCT.





18. SHORE CRANE TBF CHARTER'S ACCT.
19. OWNERS AGENTS BENDS
20. ARBITRATION IN HONGKONG AND ENGLISH LAW TO APPLY.
21. ALL OTHER TERMS AS PER GENCON 94.
**END OF CHARTER PARTY**

**OWNERS**





**CHARTERERS**

11/9-2006.

ATTACHMENT 3

**HP LaserJet** *3390*

# Fax Call Report

VOLMAX GUANGZHOU
86 20 22816920
16-Jun-2008    17 22

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 770 | 16/ 6/2008 | 17:15:16 | Send | 04118264465: | 6:34 | 8 | OK |

HP LaserJet *3390*

# Fax Call Report

ROLMAX GUANGZHOU
86 20 22810920
16-Jun-2008    17:34

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 773 | 16/ 6/2008 | 17.30 23 | Send | 008522810160? | 4·:: | ·· | ·· |

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FAIR WIND (EUROPE) S.A.,                       :
                                               :        08 CV _____
                        Plaintiff,             :
                                               :        ECF CASE
        - against -                            :
                                               :
COSCO LOGISTICS (DALIAN) CO., LTD.,            :
                                               :
                        Defendant.             :
-------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                      )        ss: Town of Southport
County of Fairfield   )

        Kevin J. Lennon, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, COSCO LOGISTICS (DALIAN) CO.,

LTD. within this District. As part of my investigation to locate the Defendant within this

District, I checked the telephone company information directory, as well as the white and yellow

pages for New York listed on the Internet or World Wide Web, and did not find any listing for

the Defendant. Finally, I checked the New York State Department of Corporations' online

database which showed no listings or registration for the Defendant.

8.     Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

9.     To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

3

Dated:      July 2, 2008
            Southport, CT

Kevin J. Lennon

Sworn and subscribed to before me
this 2nd day of July 2008.

Commissioner of Superior Court

3

# EXHIBIT 1

  COSCO GROUP

Search [ ▾ ]



Welcome to COSCO

2008/7/2



› COSCO in Asia
· COSCO in Europe
› COSCO in America
· COSCO in Africa
· COSCO in Oceania

COSCO LOGISTICS CO., LTD.

On August 1, 2002, COSCO Logistics Co., Ltd. (COSCO Logistics) was officially founded in Beijing. Today the company boasts 2.3 million square meters of storage yard and 290,000 square meters of warehouse space, with over 800 transportation vehicles including 32 super-heavy and super-scale special vehicles. The company also has other logistics resources such as barges and railways. At present the company commands total assets of RMB 5,700 million and a staff of over 11,300.

COSCO Logistics is headquartered in Beijing with 9 regional companies located in Dalian, Beijing, Qingdao, Shanghai, Ningbo, Xiamen, Guangzhou and Wuhan, and established representative offices in Korea, Japan, Singapore, Greece and Hong Kong. It also holds long-term cooperative agreements with over 40 goods transportation agencies abroad. More than 300 business stations located in 29 provinces, municipalities and autonomous regions nationwide have formed a well-equipped logistics network system. In terms of scale and strength, COSCO Logistics is one of the largest professional logistics companies in China. Effective integration and utilization of its resources established the foundation for the company's rapid and outstanding development as a major player in the international logistics sector.

COSCO Logistics is devoted to providing qualified services such as modern logistics, international shipping agency, international multi-modal transport, public freight agency, container terminal management, storage, LCL service, railway, road and barge transport, project development and management and vessel chartering. By means of a nationwide network, COSCO Logistics has mainly exploited special products including automobile logistics, household appliance logistics, project logistics and exhibition logistics to provide high value-added service.

Address: 18-21/F., TOWERCREST PLAZA, NO.3 MAIZIDIAN WEST ROAD, CHAOYANG DISTRICT, BEIJING, CHINA
Telephone: 010-6464 1181
Fax: 010-64673118
website: http://www.cosco-logistics.com.cn

Sitemap | Privacy & Security Statement | On-line Survey | Feedbacks & Complaints | Links
© 2004 China Ocean Shipping(Group)Company All Rights Reserved

 中国远洋物流有限公司
COSCO LOGISTICS

Home  ContactUs  Sitemap  Chinese

Home | About Us | News | Link my5156 | Solutions | Customer Center | Company Culture | Careers | Photo Gallery | Downloads

 Welcome to cosco-logistics.com.cn



 **About Us \ Management**

### Chen Hongsheng

- ▸ Company Profile
- ▸ Management
- ▸ Partner
- ▸ media collections
- ▸ Address Book

**Chairman**



Mr. Chen Hongsheng joined COSCO in 1975 and became executive vice president of COSCO in 1998. He had been vice general manager of Nantong Ocean Shipping Agency, general manager of shipping department of China Ocean Shipping Agency, general manager of COSCO International Freight Forwarding Company Beijing Branch, deputy managing director of COSCO International Freight Forwarding Company, deputy managing director of COSCO container unit, managing director of COSCO International Freight Forwarding Company, deputy managing director of COSCON.

Mr. Chen Hongsheng has long been engaged in international ship agency business, freight forwarding operation and seafaring management with comprehensive knowledge and rich experiences in on-the-spot operations and management.

Mr. Chen Hongsheng graduated from Sichuan Foreign Language Institute.

### Mr. SUN Jiakang

### Vice Chairman

Mr. SUN is the Deputy Chairman of COSCO Logistics Co., Ltd. He is also the Vice Chairman and Managing Director of COSCO Pacific

Limited, a Non-executive Director of Liu Chong
Hing Bank Limited, a director of China
International Marine Containers (Group) Co.,
Ltd., a fellow member of the Hong Kong
Institute of Directors, a member of International
WHO'S WHO of Professionals and a visiting
professor at Dalian Maritime University.



Mr. SUN graduated from the Faculty of
Navigation of Dalian Maritime Transportation
Institute with a bachelor degree in shipping
management in 1982 and obtained a bachelor
degree in economic management of industrial
enterprises from the People's University of
China in 1987, a master degree in management
from Dalian Maritime University in 2001 and a
doctor of philosophy (PhD) degree in
management from Preston University in 2005.

After graduating from university in 1982,
Mr. SUN joined COSCO Group and had been the
Assistant to the President and Spokesman of
China Ocean Shipping (Group) Company.

Mr. SUN has more than 20 years of
experience in shipping management and has
accumulated rich experiences in international
shipping and logistics operations.

### Ye Weilong

**Member of the Board , Chief Executive
Officer and Deputy Secretary of Party
Committee**



Mr. Ye Weilong took the posts of CEO and
deputy secretary of party committee of COSCO
LOGISTICS Company in January 2002 and
member of the board, CEO and deputy
secretary of party committee of COSCO
LOGISTICS Co., Ltd. in November 2003.

Previously, Mr. Ye Weilong had served as
assistant general manager and vice general
manager of Shanghai Ocean International

Freight Company, general manager of COSCO International Freight Company Shanghai branch, general manager of COSCO International Freight Forwarding Company and vice general manager of COSCO Container Lines Co., Ltd.

Mr. Ye Weilong has rich experience in international freight forwarding and strategic operation and management of modern logistics.

Mr. Ye Weilong received his MBA degree from the MBA program held jointly by Shanghai Maritime University and Maastricht School of Management of the Netherlands. He is also a senior economist. :

In 2000, Mr. Ye Weilong was awarded the title of "Shanghai Top Ten Outstanding Youth" and was elected as "China Top Ten Logistics Elites of the Year" in 2003.

In 2005, Mr. Ye Weilong was awarded the title of the Chartered Fellow (FCILT) by the Chartered Institute of Logistics & Transport (CILT).

Mr. Ye Weilong is also chairman of China Association of Shipping Agency.

**Ma Jianhua**

### Member of the Board, Secretary of Party Committee and Deputy Managing Director



□Mr. Ma Jianhua took the post of secretary of party committee and Deputy Managing Director of COSCO Logistics Co., Ltd. in March 2006. Previous, he had taken deputy section chief of Human Resource Department and bureau surveyor of Ministry of Communications, vice secretary of party committee and Director of Party Disciplinary Inspection Office of Shenzhen Maritime Safety Administration, and director of party committee office.

Mr. Ma Jianhua has rich experience in the public relations management, transportation management, human resource management and strategic operation and management of modern logistics.

Mr. Ma Jianhua received his bachelor's degree from the Central Party School of CPC. He is also a senior economist.

### Zhu Jianhui

### Deputy Managing Director



Mr. Zhu Jianhui took the post of deputy managing director of COSCO LOGISTICS Company in January 2002 and deputy managing director of COSCO LOGISTICS Co., Ltd. in November 2003. Before that, he had taken a variety of leading posts, such as assistant general manager, deputy general manager and general manager in China Ocean Shipping Agency Nantong, deputy general manager in China Ocean Shipping Agency Shanghai and vice general manager in China Ocean Shipping Agency head office.

Mr. Zhu Jianhui has been engaged in shipping agency and freight forwarding for years. He has abundant experience in shipping agency, international freight forwarding and strategic management of modern logistics.

Mr. Zhu Jianhui obtained his master's degree from Foreign Language Department of Shanghai Maritime University.

高

### Cao Dong

### Deputy Managing Director

☐Mr. Cao Dong became deputy managing director of COSCO LOGISTICS Company in

January 2002 and deputy managing director of COSCO LOGISTICS Co., Ltd. in November 2003. Before that, he had been serving as deputy director of executive office, deputy manager of management department of International Freight Company Shanghai, manager of Hangzhou freight forwarding department, manager of Ningbo branch, deputy director of the administrative committee of COSCO container transportation along the Yangtze River, vice general manager of COSCO International Freight Company Shanghai, vice general manager of COSCO International Freight Company Tianjin, assistant general manager and vice general manager of COSCO International Freight Company head office.



Mr. Cao Dong has been long involved in international freight forwarding. He has abundant experience in international freight and strategic management of modern logistics.

Mr. Cao Dong graduated from Shanghai Maritime University.

### Zhou Liliang

### Deputy Managing Director

Mr. Zhou Liliang became deputy managing director of COSCO LOGISTICS Company in January 2002 and deputy managing director of COSCO LOGISTICS Co., Ltd. in November 2003. His previous positions include section chief in Ministry of Communications, secretary of minister and vice general manager of COSCO International Freight Company.



Mr. Zhou Liliang has plentiful experience in transportation management, international freight forwarding, shipping agency and strategic management and operation of modern logistics.

Mr. Zhou Liliang graduated from Dalian Maritime University with a master's degree.

**Liu Yi**

**Deputy Managing Director**



Mr. Liu Yi took the post of deputy managing director of COSCO LOGISTICS Company in January 2002 and deputy managing director of COSCO LOGISTICS Co., Ltd. in November 2003. Prior to that, he had been teacher and director of administrative office in Police School of Ministry of Communications, vice general manager of International Freight Forwarding agency branch, China Road Transportation Company, deputy general manager and general manager of planning department; general manager of executive department, assistant general manager and vice general manager in COSCO International Freight Company.

Mr. Liu Yi has extensive experience in both international freight forwarding and strategic management and operation of modern logistics.

Mr. Liu Yi graduated from Xi'an Highway College.

肖

**Wang Yingjia**

**Deputy Managing Director**



Mr. Wang Yingjia became Deputy Managing Director of COSCO LOGISTICS in February 2004. Prior to that, he had been chief of engineering office in Road Transportation Company · of Ministry of Communications, deputy manager of Beijing Automobile Equipment & Technical Supply Company, deputy section chief of Transportation Management Department of Ministry of Communications, section chief, assistant director and vice director of Road Management

Department of Ministry of Communications, deputy director of Shandong Bureau of Communications.

Mr. Wang Yingjia has rich experience in transportation administration and strategic management and operation of modern logistics.

Mr. Wang Yingjia graduated from Chang'an University with a master's degree, majoring in transportation planning and administration.

### Yang Peidong

### Chief Financial Officer



Mr. Yang Peidong, senior accountant, took post of CFO of COSCO LOGISTICS Company in January 2002 and CFO of COSCO LOGISTICS Co., Ltd. in November 2003. Prior to that, he had been chief, director of audit department in COSCO Tianjin, manager of financial department, deputy CFO, CFO in COSCO International Freight Forwarding Company.

Mr. Yang Peidong has extensive experience in financial management and operation. Mr. Yang Peidong was granted his master's degree by Central Party School of CPC.

### Yao Hong

### Vice Secretary of Party Committee and Secretary of Party Discipline Inspection Committee

Mrs. Yao Hong was appointed Vice Secretary of Party Committee and Secretary of Party Disciplinary Inspection Committee of COSCO LOGISTICS Co., Ltd. in March 2006. Previous,

She served as the vice director of Politics affair department of COSCO GROUP, Executive Director and Vice President of COSCO (SINGAPORE) PTE LTD.



Mrs. Yao Hong has been working in the business of public relations management, enterprise culture management and enterprise management for decades.

Mrs. Yao Hong was conferred Master degree of enterprise management by Economics College of Beijing Normal University.

### Wen Liyan

### Chairman of Union

Ms. Wen Liyan became Chairman of Union of COSCO LOGISTICS Company in January 2002 and Chairman of Union of COSCO LOGISTICS Co., Ltd. in November 2003. Before that, She had been Vice Secretary of Disciplinary Inspection Committee of CPC (presiding at overall work) in COSCO International Airfreight Co., Ltd., Secretary of Disciplinary Inspection Committee of CPC and Chairman of Union in COSCO International Airfreight Co., Ltd., Beijing and Vice Secretary of Disciplinary Inspection Committee of CPC in China Ocean Shipping Agency head office.

Ms. Wen Liyan has rich experience in union management and Company Culture construction.

Ms. Wen Liyan received her master's degree from Capital University of Economics and Business.

BACK TOP

Copyright© 2004-2008 COSCO LOGISTICS. All rights reserved. 京ICP备05045890号